UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

ANNE BREAUD,

 Plaintiff,

v.

DARREN BREAUD, ET AL.,

 Defendants.

Case No. 1:15-cv-00053

Magistrate Judge Newbern

# MEMORANDUM AND ORDER

  Plaintiff Anne Breaud brought this 42 U.S.C. § 1983 civil rights action against her former husband Darren Breaud, his friend Brian Hunt, Officer Tommy McClanahan, Hickman County, and the City of Centerville, Tennessee (Centerville). (Doc. No. 21.) The Court granted summary judgment to Hickman County and Centerville, denied summary judgment to Defendants Breaud and Hunt, and granted summary judgment in part to McClanahan, leaving for trial the single issue of whether Defendants Breaud, Hunt, and McClanahan conspired to violate Plaintiff's Fourth Amendment right to be free from unreasonable seizure. (Doc. No. 123.) Before trial, Plaintiff settled her claims with McClanahan and Centerville. Defendants Darren Breaud and Hunt (collectively, Defendants) went to trial, which concluded with a jury verdict in Plaintiff's favor and an award of nominal damages. (Doc. No. 168.)

  Plaintiff filed a bill of taxable costs (Doc. No. 169) and a motion for attorney's fees and costs (Doc. No. 170). Defendants now oppose the Clerk's final taxation of costs and Plaintiff's motion for attorney's fees on grounds that, if warranted at all, those awards must be offset by the amount of Plaintiff's settlement with McClanahan and Centerville. (Doc. Nos. 171, 176, 181–83,

192–93, 197–98.) Defendants also move for production of the settlement agreement. (Doc. Nos. 179, 180, 187, 191). That motion was effectively rendered moot when Defendants apparently procured the settlement agreement from another source and filed it with the Court. (Doc. No. 195.)

Having considered the parties' arguments and the reasonableness of Plaintiff's request for fees and costs, the Court will DENY Defendants' motions for review of the Clerk's final taxation of costs (Doc. Nos. 197, 198), GRANT IN PART AND DENY IN PART Plaintiff's motion for attorneys' fees and costs (Doc. No. 170), FIND MOOT Defendants' motion for production of the settlement agreement (Doc. No. 179), and DENY Defendants' motions for judgment as a matter of law or a new trial (Doc. Nos. 184, 185).

**I.     Background**

Plaintiff alleged that Defendants conspired with McClanahan and others to have her stopped and arrested for driving under the influence without reasonable suspicion or probable cause, in violation of 42 U.S.C. § 1983. (Doc. No. 21.) Plaintiff was represented by attorney John Colley through summary judgment. On January 6, 2017, the Court granted Colley's motion to withdraw as Plaintiff's counsel. (Doc. Nos. 122, 124.) In late January and early February 2017, respectively, attorneys Elizabeth Russell and Jill L. Craft entered their appearances on Plaintiff's behalf. (Doc. Nos. 126, 129–32.)

Russell and Craft negotiated Plaintiff's settlement with McClanahan and Centerville, the essential terms of which were agreed to in a Settlement Memorandum dated April 21, 2017 (Doc. No. 195-2), then formalized and executed in a Settlement Agreement on May 15, 2017. (Doc. No. 195-1, PageID# 1614–15.) The Agreement states that it is "not intended to benefit Darren Breaud [or] Brian Hunt." (*Id.* at PageID# 1613.) It further states that Plaintiff "will bear her own discretionary and related costs, including attorneys' fees, with respect to her claims against Officer

Tommy S. McClanahan and/or the City of Centerville." (*Id.*) Finally, the Agreement states that "[i]t is fully understood and agreed that out of the proceeds of this settlement, [Plaintiff] will satisfy any and all related litigation and/or discretionary costs . . . ." (*Id.* at PageID# 1614.) The Court's order dismissing Plaintiff's claims against McClanahan and Centerville states that "each party [is] to bear his or its own costs and attorneys' fees incurred in the litigation with respect to claims of plaintiff against Officer McClanahan and the City of Centerville." (Doc. No. 173, PageID# 1483.)

On May 9, 2017, Plaintiff went to trial against Defendants, and the jury returned a verdict in her favor on May 12, 2017.[1] The judgment reflects the jury's finding that Plaintiff "proved by a preponderance of the evidence that Defendants, Darren Breaud and Brian Hunt, conspired to violate the Fourth Amendment rights of Plaintiff in violation of Section 1983, but the conduct of Defendants was not the proximate cause of any injury to Plaintiff." (Doc. No. 168.) Plaintiff was therefore not awarded compensatory or punitive damages, but was awarded nominal damages of one dollar against each Defendant. (Doc. Nos. 163, 165, 168.) Plaintiff moved for attorneys' fees and other non-taxable costs. (Doc. No. 170.) The Clerk of Court made a final taxation of costs in the amount of $4,619.22 in favor of Plaintiff and against Defendants. (Doc. No. 196.)

**II.     Legal Standard**

Taxable costs are awarded pursuant to Federal Rule of Civil Procedure 54, which states that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Rule

---

[1] The Court recognizes and apologizes to the parties and their counsel that these motions have been pending for too long.

3

creates a presumption in favor of awarding litigation costs that the Court may deny in its discretion.[2] *Knology v. Insight Commc'ns Co., LP*, 460 F.3d 722, 726 (6th Cir. 2006).

Plaintiff seeks to recover her attorneys' fees from Defendants pursuant to 42 U.S.C. § 1988. (Doc. No. 170.) That statute provides that, "[i]n any action or proceeding to enforce a provision of [section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). Although parties generally bear their own litigation expenses—including attorneys' fees—regardless of the outcome of the lawsuit, the fee-shifting provision of Section 1988 recognizes that "[w]hen a plaintiff succeeds in remedying a civil rights violation, . . . [s]he serves 'as a private attorney general, vindicating a policy that Congress considered of the highest priority.'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)). Fee-shifting in these cases "at once reimburses a plaintiff for what it cos[t] [her] to vindicate [civil] rights, and holds to account a violator of federal law." *Id.* (internal quotations omitted). It does not seek to further compensate the victorious civil rights plaintiff for her injury, but to "compensate the plaintiff for the time [her] attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention,'" because the result of correcting the civil

---

[2] Pursuant to 28 U.S.C. § 1920, the following costs are properly taxed by the clerk and included in the judgment:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under [28 U.S.C. § 1923];
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

4

rights violation "is what matters." *Id.* at 834 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

### III. Analysis

Defendants do not argue that Plaintiff is not entitled to recover her costs under Rule 54 or object to the Clerk's calculations. Nor do Defendants argue that Plaintiff is not the prevailing party in this action and therefore not entitled to recover costs or attorneys' fees. (Doc. No. 197, PageID# 1618; Doc. No. 198). Instead, Defendants argue, first, that because Plaintiff received only nominal damages, the only reasonable attorneys' fee award is no fee at all. Second, they argue that any award of fees or costs must be offset by the amount Plaintiff received in her settlement with McClanahan and Centerville, in light of the joint and several liability of all defendants for the harm alleged to have resulted from the conspiracy.

#### A. The One-Satisfaction Rule

Defendants' argument that Plaintiff's fee and cost awards must be offset by her settlement stems from the so-called "one satisfaction rule," articulated in the Restatement (Second) of Torts as follows:

> A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.

Restatement (Second) of Torts § 885(3) (1979).

This rule embodies "[t]he basic legal principle . . . that a plaintiff should be made whole for [her] injuries, but should not receive a windfall." *In re Foote Memorial Hosp./PCIS Litig.*, 25 F.3d 406, 410 (6th Cir. 1994). "A limitation upon the application of this rule, of course, is that the nonsettling defendant is only entitled to the offset if the judgment and the settlement relate to

5

common damages." *Id.* So, for example, if a judgment only awards actual damages, but the settlement is allocated between actual damages and exemplary damages, the portion allocated to exemplary damages could not be used to offset the non-settling defendant's liability for the plaintiff's actual damages. *See Howard v. Gen. Cable Corp.*, 674 F.2d 351, 358–59 (5th Cir. 1982).

The general principle of "one satisfaction" is applied differently to the various types of awards that may be made in a civil action. Defendants cite *Watts v. Laurent*, 774 F.2d 168 (7th Cir. 1985), as an example of the one-satisfaction rule's application to compensatory damages in the context of a § 1983 action. In *Watts*, the court faced the issue of ambiguous verdict forms that left unclear whether the jury had awarded the plaintiff a compensatory damages award of $40,000 against five defendants jointly and severally, or $40,000 against each of the five defendants individually, resulting in a $200,000 total award. *Id.* at 175. The Seventh Circuit found it "axiomatic" that, "where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury." *Id.* at 179. Recognizing that, although a plaintiff "may proceed to judgment against any or all of the responsible actors in a single or several different actions," the court held that "the very nature of damages as compensation for injury suffered requires that once the plaintiff has been fully compensated for his injuries by one or more of the tortfeasors, he may not thereafter recover any additional compensation from any of the remaining tortfeasors." *Id.* Ultimately, the court determined that the plaintiff had suffered a single injury and was therefore entitled only to a single $40,000 award apportioned among the five defendants. *Id.* at 180; *see also Weeks v. Chaboudy*, 984 F.2d 185, 189 (6th Cir. 1993) (recognizing the applicability of joint and several liability in the § 1983 context via *Watts*).

Defendants also cite *Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.*, 569 F.3d 1353 (Fed. Cir. 2009) [*Ortho-McNeil I*], as an example of the one-satisfaction rule's application in the context of a plaintiff's taxable costs. *Ortho-McNeil I* was one of two patent infringement cases filed regarding the antibiotic levofloxacin. In the first case, Ortho-McNeil and Daiichi Pharmaceuticals sued Mylan Laboratories. *Id.* at 1354. In a second parallel action, Ortho-McNeil and Daiichi sued Teva Pharmaceuticals. *See Ortho–McNeil Pharm., Inc. v. Teva Pharms. USA,* No. 3:02–CV–02794 (D.N.J. filed June 12, 2002) [*Ortho-McNeil II*].

After the district court ruled on summary judgment in *Ortho-McNeil II*, Daiichi settled with Teva and agreed that Daiichi would not to seek its taxable costs in exchange for Teva's agreement not to appeal the summary judgment ruling. *Ortho-McNeil I* 569 F.3d at 1356. Thereafter, the district court in *Ortho-McNeil I* addressed the taxation of Daiichi's costs against Mylan. As is pertinent here, the district court rejected Mylan's argument that it should share Daiichi's discovery-related costs with Teva because Teva had attended and benefited from depositions taken in both actions. 569 F.3d at 1355–56. The court declined to allocate discovery-related costs between the two cases. *Id.*

The Federal Circuit vacated the district court's ruling, noting, first, that Daiichi had agreed that the same costs could not be taxed in both actions. *Id.* at 1358. The court then found that Daiichi had already recovered some amount of costs through its settlement with Teva as consideration for Teva's agreement to forego an appeal. *Id.* For that reason, the court held that "Daiichi cannot now recover more than its total entitlement by obtaining those same costs again from Mylan." *Id.* The Federal Circuit remanded the case for the district court to determine the amount by which the cost award against Mylan should be reduced. *Id.*

This Court has recognized the application of this one-satisfaction rule in the § 1983 context, applying the limitation that it only creates an offset in payment of common damages. In *Goad v. Macon Cty.*, the Court considered the case of a pretrial detainee who, after settling with several defendants prior to trial, proved to a jury that the remaining defendants violated his constitutional rights and received awards of compensatory and punitive damages. 730 F. Supp. 1425, 1425–26 (M.D. Tenn. 1989). Upon the non-settling defendants' post-verdict motion to reduce both awards by the amount of the settlement proceeds, the Court first considered the authority for such offset in Section 1983 and its related fee provisions. Finding no support in the federal statute and "no clearly established federal common law of settlement set-offs," *Goad*, 730 F. Supp. at 1427–30, the Court turned to Tennessee law. It located the one-satisfaction principle in Tenn. Code Ann. § 29-11-105, which Defendants also rely on here.[3] *See id.* at 1430. The Court concluded that "applying Tennessee created set-offs to compensatory damage awards does not create any inconsistency with 42 U.S.C. § 1983," the primary purpose of which "is to compensate victims for the injuries of having their civil rights violated." *Id.* at 1431. The Court found that this purpose "is in no way compromised by applying settlement monies as a credit or set-off to a subsequent jury award of compensatory damages against the nonsettling defendants." *Id.*

Nevertheless, the Court limited that determination to compensatory damage awards, finding that its extension to punitive damages would be inconsistent with the basic purposes of federal civil rights legislation. *Id.* at 1432. A set-off under Tennessee law is consistent with federal

---

[3] This statute provides that, "[w]hen a release or covenant not to sue . . . is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury . . . [i]t does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others . . . in the amount of the consideration paid for it[.]" Tenn. Code Ann. § 29-11-105(a)(1).

legislation in the context of compensatory damages "because the victim still receives complete compensation." *Id.* However, the Court found that the purpose of a punitive damage award against a particular defendant would be "completely bypassed" if it could be reduced by the amount of a settlement with another party. *Id.* Because applying the one-satisfaction rule to punitive damages would result in a "lesser punishment than the jury deemed appropriate," the Court did not allow its extension to that context. *Id.*

Here, Defendants argue that Plaintiff's taxable costs and any fee award the Court might make should be reduced sum-for-sum by her settlement with McClanahan.

### B. Defendants' Motions for Review of Costs Taxed (Doc. Nos. 197, 198)

Following the entry of judgment in her favor, Plaintiff filed her bill of taxable costs (Doc. No. 169). The Clerk taxed costs in the amount of $4,619.22 in Plaintiff's favor.[4] (Doc. No. 188.) Defendants do not contest Plaintiff's status as the prevailing party in this action or that the Clerk's award represents her actual costs in the litigation. (Doc. No. 197, PageID# 1618; Doc. No. 198.) Instead, Defendants argue that, "in this joint and several liability conspiracy case, [Plaintiff] already has been compensated for these claimed costs through her settlement with the settling defendant tortfeasor Officer Tommy McClanahan." *Id.* Because "a prevailing plaintiff may receive

---

[4] Pursuant to 28 U.S.C. § 1920, the following costs are properly taxed by the clerk and included in the judgment:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under [28 U.S.C. § 1923];
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

9

only one satisfaction of costs," Defendants argue that the Court must deny Plaintiff any further recovery. (Doc. No. 197, PageID# 1618, 1621; Doc. No. 198.) For the reasons that follow, the Court finds that the Settlement Agreement award included all costs incurred to the date of the settlement, but that Plaintiff can recover costs incurred post-settlement, which she calculates to be $1,753.92. (Doc. No. 199, PageID# 1626.)

Looking first to the Settlement Agreement itself, its terms provide that its award satisfies "any and all related litigation and/or discretionary costs . . . ." (Doc. No. 195-1, PageID# 1614.) The Settlement Agreement also provides that Plaintiff "will bear her own discretionary and related litigation costs . . . with respect to her claims against" McClanahan and Centerville. (*Id.* at PageID# 1613.) Harmonizing these provisions, the Court finds that their somewhat contradictory terms provide that there would be no additional payment of costs arising out of Plaintiff's claims against McClanahan and Centerville and "related litigation" to date because those costs were covered by Plaintiff's award.

The Court finds that the Settlement Agreement therefore included in its terms all costs incurred in the litigation to date. Plaintiff cannot recover those costs a second time from Defendants. However, the Settlement Agreement did not contemplate and does not cover any costs incurred after it was entered into. Those post-settlement costs must be taxed against the non-settling Defendants. Allowing Plaintiff that recovery represents only total compensation for costs incurred before and after her settlement with McClanahan and Centerville, the latter caused by Defendants' decision to proceed to trial. The reduced award is not a windfall. Plaintiff shall therefore recover her post-settlement costs in the amount of $1,753.92.[5]

---

5    While Plaintiff also notes that certain deposition taken before the settlement were used at trial, because the depositions were taken before the settlement (Doc. No. 199 at PageID# 1626),

**C. Plaintiff's Motion for Attorneys' Fees (Doc. No. 170)**

Plaintiff seeks $90,983.10 in attorneys' fees for services rendered by Russell and Craft from the time they began representing Plaintiff in January and February of 2017, respectively, to the conclusion of trial on May 12, 2017. Alternatively, Plaintiff suggests that the Court could reduce the fee award by one-third in recognition of her settlement with McClanahan and Centerville. Plaintiff also seeks to recover $2,500.00 in expert witness fees related to the trial testimony of her therapist, Tracy Steyer. Defendants oppose Plaintiff's request for fees, arguing that, because Plaintiff was awarded only nominal damages, she is not entitled to recover any fee award under *Farrar v. Hobby*, 506 U.S. 103 (1992). Additionally, Defendants argue that, even if Plaintiff were entitled to attorneys' fees, any award must be reduced or discharged because of her settlement award. Finally, Defendants argue that Plaintiff is not entitled to recover $2,500.00 in expert witness fees because such fees are not recoverable in § 1983 litigation.

The application of the one-satisfaction rule in the context of attorneys' fees differs materially from its application to compensatory damages awards or other taxable costs.[6] First, "[t]here is no precise rule or formula for making [attorney's fee award] determinations . . . The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37. Second, unlike the application of joint and several liability where causation is indivisible, there are clear lines of demarcation as to what fees were accrued when and for what reasons. For example, the Court can easily determine what fees were accrued before and after Plaintiff's settlement. Finally, an award of attorney's fees did not become appropriate until after Plaintiff became a

---

and thus, existed at the time of the McClanahan settlement, the deposition costs were covered by the settlement.

[6] Attorney's fees are awarded as part of the prevailing party's costs, not as part of a compensatory damages award. 42 U.S.C. § 1988.

prevailing party when the jury returned its verdict in her favor against Defendants. *Hensley*, 462 U.S. at 429. Apportionment of the fee award between McClanahan and the defendants who went to trial is possible, and the Court need not rely on joint and several liability to accomplish an equitable award.

Defendants agree that Plaintiff is a prevailing party for purposes of an attorneys' fee award. Accordingly, Defendants do not contest that Plaintiff succeeded on a "significant issue in [the] litigation which achieves some of the benefit [she] sought in bringing suit." *Farrar*, 506 U.S. at 109 (noting that "[a] plaintiff who wins nominal damages is a prevailing party under § 1988"). The Court must therefore determine, in its discretion, a reasonable fee award. *Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014) ("Although § 1988 uses permissive language regarding fee awards, the Supreme Court has read [§ 1988] as mandatory where the plaintiff prevails and special circumstances are absent.'"): *Deja Vu v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 421 F.3d 417, 422 (6th Cir. 2005) (noting that the Supreme Court has offered "[l]ittle guidance . . . as to precisely what constitutes a special circumstance that would defeat a fee award"). "The most critical factor in determining the reasonableness of an attorney's fees award is the degree of success obtained." *Pouillon v. Little*, 326 F.3d 713, 716 (6th Cir. 2003) (citing *Farrar*, 506 U.S. at 114.)

Where a plaintiff recovers only nominal damages because of a "failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115. "Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought. Such a comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the

case." *Id.* at 114–15 (internal citations and quotation marks omitted). The Court emphasized the discretionary nature of this determination, finding that "the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness" normally considered in a fee award determination "or multiplying 'the number of hours reasonably expended . . . by a reasonable hourly rate.'" *Farrar*, 506 U.S. at 115 (quoting *Hensley*, 461 U.S. at 433.)

While the *Farrar* majority focused on comparing the amount of damages recovered to the amount sought, in her concurring opinion, Justice O'Connor articulated a three-factor test to evaluate the reasonableness of a fee award in an action where the plaintiff recovered only nominal damages. In addition to considering the degree of success obtained, Justice O'Connor's test examines (1) the significance of the legal issues on which the plaintiff prevailed and (2) whether the litigation served a public purpose, as opposed to simply vindicating the plaintiff's individual rights. *Farrar,* 506 U.S. at 121–22 (O'Connor, J., concurring). The Sixth Circuit has not expressly adopted or rejected Justice O'Connor's approach. *Glowacki v. Howell Pub. Sch. Dist.*, 566 F. App'x 451, 453 n. 1 (6th Cir. 2014) (noting that the Third, Seventh, Eighth, Ninth, and Tenth Circuits[7] have adopted the additional factors laid out in Justice O'Connor's concurrence but that the court had "no occasion to do so here given that all considerations point to awarding no attorney's fees"). In *Hescott v. City of Saginaw*, 757 F.3d 518, 525 (6th Cir. 2014), the Sixth Circuit

---

[7] The First Circuit and the Fourth Circuit are also among the majority of circuits that have relied on the application of the factors identified by Justice O'Connor when considering whether to award attorney's fees where a plaintiff is awarded only nominal damages. *See e.g. Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 124–27 (1st Cir. 2004) (recognizing that the district court appropriately applied the O'Connor factors in awarding attorney's fees to a plaintiff whose "victory was *de minimis* as to the extent of relief," where "the determination that the municipality violated plaintiffs' constitutional rights represented a significant legal conclusion serving an important public purpose."); *Mercer v. Duke University*, 401 F.3d 199, 204 (observing that "the factors set forth by Justice O'Connor help separate the usual nominal-damage case, which warrants no fee award, from the unusual case that does warrant an award of attorney's fees.")

13

questioned whether the use of Justice O'Connor's expanded test was proper, given that the Court's majority opinion did not adopt it; however, the court ultimately found that, even if the O'Connor test could be used in some circumstances, it did not apply in that case. *Id.* Some district courts within the Sixth Circuit, including this Court, have applied the O'Connor test in determining the reasonableness of a fee award. *See Layman Lessons, Inc. v. City of Millersville, TN*, 550 F. Supp. 2d 754, 764–66 (M.D. Tenn. 2008) (applying the O'Connor test and awarding full attorney's fee award despite recovery of only nominal damages where plaintiff obtained summary judgment under the Religious Land Use and Institutionalized Persons Act); *see also McClusky v. Lake Hosp Systems, Inc.*, No. 1:14-CV-519, 2015 WL 4629251, at *4–5 (N.D. Ohio Aug. 2, 2015) (applying the O'Connor test but denying attorney's fees where plaintiff, claiming retaliation after he was terminated for hiring a lawyer to oppose alleged gender discrimination, was awarded $1.00 in damages); *Hamilton v. Lokuta*, 871 F.Supp. 314, 317–18 (E.D. Mich. 1994) (applying the O'Connor test but denying fees where plaintiff recovered $1.00 in compensatory damages).

With these considerations in mind, the Court finds that, despite Plaintiff's recovery of only nominal damages, certain features of this case make a low fee award appropriate. Unlike most § 1983 actions involving state-actor defendants, this case went to trial without a state actor as a party. Plaintiff therefore had to prove to the jury that her soon-to-be former husband and his friend obtained the cooperation of law enforcement officers in a scheme to tarnish Plaintiff's reputation so that Defendant Breaud could obtain an advantage in divorce and child custody proceedings.[8]

---

8   Specifically, the jury was instructed that:

   To find a conspiracy in this case, you must find that Plaintiff has proved both of the following by a preponderance of the evidence:

   First: Defendants agreed in some manner with Officer McClanahan and/or another participant in the conspiracy with Officer McClanahan to do an act that

This was no small burden.[9] Yet Plaintiff was victorious on every claim she took to trial.[10] Plaintiff was able to convince the jury—based entirely on circumstantial evidence and despite the denials of all involved—that Defendants were liable for conspiring with multiple other parties to have her stopped by Officer McClanahan under false pretenses. That is, as Plaintiff argues, significant in and of itself. The Court finds it reasonable to make an award of fees that recognizes the difficulty and importance of vindicating Plaintiff's rights, but which also reflects the jury's determination that Defendants' actions were not the cause of any injury to Plaintiff.

Although Plaintiff argued that compensatory and punitive damages were appropriate, she did not ask the jury for a specific amount. Thus, the Court cannot compare the amount of damages Plaintiff sought to the amount that she received as a means of evaluating her success. While a

---

deprived Plaintiff of her Fourth Amendment rights. In order to find this element, you must find that there was a jointly accepted plan, and that Defendants, Officer McClanahan, and the other conspirators knew the plan's essential nature, general scope, and agreed to it.

Second: Defendants or a co-conspirator engaged in at least one act in furtherance of the conspiracy.

[9] A study based on data from the Administrative Office of the U.S. Courts found that, in federal litigation, "constitutional tort plaintiffs did significantly worse than non-civil rights litigants. Stewart J. Schawab & Theodore Eisenberg, *Explaining Constitutional Tort Litigation: The Influence of the Attorney Fees Statutes and the Government as Defendant*, 73 Cornell L. Rev. 719, 728–31 (1988). The analysis showed that non-prisoner constitutional tort plaintiffs prevailed in only 22.1% of reported cases. *Id.* By comparison, non-civil-rights plaintiffs prevailed in 73.2 % of cases, or 56.3 % of cases excluding those resolved by default judgment. *Id.* In other words, a non-prisoner plaintiff pursuing a constitutional tort claim lost more than two times as often as a plaintiff not raising constitutional claims.

[10] While Plaintiff did not prevail against every defendant and on every claim she first raised in her complaint, the degree of a plaintiff's success is not measured by reference to the ratio of victorious to non-victorious claims; "plaintiffs may receive fees under § 1988 even if they are not victorious on every claim." *Fox*, 563 U.S. at 834-35; *see also Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554 (6th Cir. 2008) (recognizing that "[w]e have 'repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.'") (quoting *Déjà vu of Nashville, Inc.*, 421 F.3d at 423.)

superficial view of this case might suggest that no public purpose was served, a closer look establishes the contrary. There is value in holding private actors accountable when they harness the power of the state and use it against another private party for personal gain. *See* Jack M. Beermann, *Why Do Plaintiffs Sue Private Parties Under Section 1983?*, 26 Cardozo L. Rev. 9, 34 (2004) (noting that a plaintiff who brings §1983 claims against private parties "may be making a point relating to private use of state power, that when constitutional values are threatened by private actors, they ought to be subject to the same constraints as public actors. What is important are the constitutional values at stake, not the identity of the party threatening them.").

Defendants argue that, if an award is made, it must be subject to offset because of the one-satisfaction rule and its underlying principles of joint and several liability. Defendants do not cite any authority standing for the proposition that attorney's fees are subject to the same rules of joint and several liability that cover compensatory damages.[11] The Court finds that the one-satisfaction rule is a poor fit for an attorneys' fee determination.

First, "[t]here is no precise rule or formula for making [attorney's fee award] determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37. Second, joint and several liability is intended to compensate for an *indivisible* injury. Here, McClanahan settled

---

[11] The Ninth Circuit has held that "a non-settling defendants is entitled to offset attorney's fees owed by the amount already paid by settling defendants." *See Corder v. Brown*, 25 F.3d 833, 840 (9th Cir. 1994). However, the Sixth Circuit does not appear to have joined the Ninth Circuit in this holding. Nevertheless, even if it had, the results here would not change. In order to calculate the appropriate offset, the Court would have to reduce the amount of attorney's fees awarded by separating from the award any fees incurred in pursuit of claims against the settling defendants. *See Dream Games of Arizona, Inc. v. PC Onsite, L.L.C.*, No. CV-03-00433-PHX-ROS, 2010 WL 11534107, at *2 (D. Ariz. Mar. 18, 2010). Not, as Defendants here wish, to apply the entire sum of the settlement to the entire sum of attorney's fees claimed.

before trial and did not cause Plaintiff to incur any of the attorney's fees she incurred after the settlement. In other words, Plaintiff's attorneys' fees became divisible when McClanahan and Centerville settled. Finally, under § 1988 attorney's fees become recoverable only after a plaintiff establishes that she is a prevailing party. *Hensley,* 461 U.S. at 429. Plaintiff did not become a prevailing party until the jury returned a verdict in her favor against Defendants Breaud and Hunt. At that point, McClanahan was no longer a party to the lawsuit and could not be liable for any attorney's fees based on Plaintiff's prevailing party status. Based on the foregoing and in the absence of any controlling authority dictating otherwise, the Court finds that Defendants have failed to establish that joint and several liability is applicable to the award of attorney's fees here.

Because the Court has determined that only a low fee is appropriate, it need not set forth a detailed explanation of its fee determination. *See Fararr*, 506 U.S. at 115. Consequently, the only question that remains is the amount of a reasonable, but low, fee award in this case.[12] Taking into account all of the circumstances of the litigation, the Court finds that the requested fee award of $90,983.10 should be reduced to $5,000.00. This award recognizes the significance of Plaintiff's verdict, but does not ignore that Plaintiff received only nominal damages. It, like the award of Plaintiff's costs, is not a windfall.

Finally, the Court declines to award the $2,500.00 in expert witness fees Plaintiff paid for the testimony of Ms. Steyer. (Doc. No. 170-5 PageID# 1472–73.) Plaintiff cites no authority for the award of expert witness fees in a Section 1983 action. Indeed, many other courts have found no basis for such an award in similar contexts. *See Hines v. DeWitt*, No. 2:13-CV-1058, 2016 WL 2342014, at *10 (S.D. Ohio May 4, 2016) (noting that "[t]he language of § 1988(c) does not

---

[12] Craft and Russell both requested that they recover attorney's fees at an hourly rate of $300.00. Defendants did not object to this hourly rate.

contain explicit statutory authority to shift expert-witness fees in § 1983 actions"); *H.D.V.- Greektown, L.L.C. v. Detroit, City of*, No. 06-11282, 2015 WL 1530353, at *13 (E.D. Mich. Mar. 31, 2015) (collecting analogous cases from district courts in New York, Nebraska, Oregon, California, and Arizona); *Ruff v. Cnty. of Kings*, 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010) ("[C]ases are uniform that Section 1988(c) does not apply to a Section 1983 action.").

### D. Defendants' Motion to Produce Settlement Agreement (Doc. No. 179)

Defendant Darren Breaud sought an order of the Court directing Plaintiff to produce a copy of the Settlement Agreement. (Doc. No. 179.) Breaud apparently obtained the document from "another source" and filed it with the Court. (Doc. No. 195.) This motion is therefore FOUND MOOT.

### E. Defendants' Motions for Judgment as a Matter of Law (Doc. Nos. 184, 185)

Defendants move under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law or, alternatively, under Federal Rule of Civil Procedure 59 for a new trial. Defendants renew arguments they made at the conclusion of trial that there was insufficient evidence from which a reasonable jury could find that McClanahan knowingly conspired with Defendants Breaud and Hunt to violate Plaintiff's constitutional rights.[13] Plaintiff opposes Defendants motions.

A Rule 50(b) motion "may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001) (citing *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175–76 (6th Cir. 1996)). The Court may not reweigh the evidence or assess

---

[13] Defendants' cursory motions make no arguments and only refer to their previous in-court statements.

the credibility of witnesses. *Id*. at 600 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). A new trial is warranted under Rule 59(a) "when a jury has reached a 'seriously erroneous result' as evidenced by (1) the verdict being against the weight of the evidence, (2) the damages being excessive, or (3) the trial being unfair to the moving party . . . ." *See Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996).

The Court may not reweigh the evidence here or impose its judgment for that of the jury. Defendants offer no basis for the Court to replace the jury's decision with its own. For the reasons stated on the record in denying Defendants' in-court motions, Defendants' renewed motions for judgment as a matter of law or, in the alternative, for a new trial, are denied.

**IV.     Conclusion**

For these reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for attorney's fees and costs (Doc. No. 170); DENIES AS MOOT Plaintiff's motion to produce the settlement agreement (Doc. No. 179); DENIES Defendants' motions for judgment as a matter of law (Doc. Nos. 184, 185); and GRANTS IN PART AND DENIES IN PART Defendants' motions for review of the Clerk's final taxation of costs. (Doc. Nos. 197, 198.)

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge